1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LUIS AGUILAR and VEDA RAMOS,              No.  1:15-cv-00093-DAD-EPG
    individually and on behalf of those
12  similarly situated,

13                  Plaintiffs,               ORDER GRANTING MOTION FOR
                                              PRELIMINARY APPROVAL OF CLASS
14          v.                                ACTION SETTLEMENT

15  WAWONA FROZEN FOODS, and DOES             (Doc. No. 70)
    1-50, inclusive,
16
                    Defendants.
17

18          This matter came before the court on December 6, 2016 for hearing on plaintiffs' motion

19  for preliminary approval of a class action settlement.  (Doc. No. 70.)  The motion is unopposed.

20  Though captioned as a motion solely for preliminary approval of a class action settlement, the

21  motion before the court also seeks preliminary certification of a class of plaintiffs alleging

22  violations of California law under Rule 23 of the Federal Rules of Civil Procedure, and

23  conditional certification of a class of plaintiffs for a collective action under the Fair Labor

24  Standards Act ("FLSA").  (Doc. No. 70-1 at 22.)  Attorneys Philip A. Downey and Robert W.

25  Sink appeared at the hearing on behalf of plaintiffs, and attorney Ian Wieland appeared on behalf

26  of defendant.  At the hearing, the court sought additional information from plaintiffs prior to

27  ruling on the motion.  Plaintiffs were therefore directed to submit supplemental material by

28  December 20, 2016, which they did, thoroughly addressing the court's inquiry.  The matter was

                                            1

1   thereafter taken under submission.  For the reasons specified below, the court will grant the

2   motion.

3                                              **BACKGROUND**

4          This wage-and-hour class action was originally filed in this court on January 20, 2015.

5   (Doc. No. 1.)  This case is currently proceeding on plaintiffs' second amended complaint

6   ("SAC"), filed on October 2, 2015.  (Doc. No. 46.)  Plaintiffs and the putative class members are

7   employees and former employees of Wawona Frozen Foods, which owns and operates various

8   food production facilities.  Plaintiffs allege they are non-exempt, hourly employees who were not

9   paid for all required pre- and post-shift work activities required for their jobs, including "donning

10  and doffing SG,[1] waiting in line to sanitize, [and] waiting in line to punch-in/out."  (Doc. No. 46

11  at ¶ 5.)  Additionally, putative class members were allegedly provided with neither "legally

12  compliant meal and rest breaks on shifts of 10 hours or less" nor a second off-duty thirty-minute

13  meal period in compliance with California law on shifts lasting more than ten hours.  (*Id.* at ¶ 6.)

14  Plaintiffs allege they were required to don and doff protective equipment both during their breaks

15  and before work, resulting in them neither receiving fully compliant breaks, nor being paid for the

16  time required to don the protective equipment.  (*Id.* at ¶¶ 13–19.)  Plaintiffs also alleged that "[a]t

17  the end of the day—and after the conclusion of paid time by Defendants—Plaintiffs and Class

18  Members also were required to engage in GMP[2] and SSOP[3] work activities without pay."  (Doc.

19  No. 46 at 5.)

20         Plaintiffs' SAC presents the following nine causes of action:  (1) failure to pay the

21  requisite minimum wage pursuant to various California labor laws; (2) failure to compensate for

22  all hours worked in violation of California law; (3) failure to pay overtime wages in violation of

23  _____

24  [1]  The court takes "SG" to refer to "safety gear," since the SAC also alleges, "[m]andatory SG
    [required to be worn by plaintiffs] includes, *inter alia*, plastic aprons, smocks, plastic arm sleeves,

25  plastic and/or cloth gloves, hairnets, goggles, and other protective equipment and coverings."
    (Doc. No. 46 at ¶ 14.)

26  [2]  Though not explained in the SAC, this acronym likely refers to "good manufacturing

27  practices."

28  [3]  The court assumes this acronym refers to "standard sanitation operating procedures."

California law; (4) failure to provide meal and rest breaks in accordance with California law; (5) penalties in relation to unpaid wages and waiting time penalties pursuant to California Labor Code §§ 201–03; (6) failure to properly itemize pay stubs in violation of California law; (7) violations of California Business and Professions Code § 17200, *et seq.*; (8) civil penalties available under California Labor Code § 2698, *et seq.*; and (9) violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for failing to pay overtime wages or providing appropriate meal and rest breaks. (Doc. No. 46.)

Plaintiff seeks certification of two classes:

California Law Class:

> All non-exempt hourly workers who were employed or are currently employed by Wawona Frozen Foods at its California facilities at any time from January 20, 2011 through September 11, 2016.

FLSA Overtime Class:

> All non-exempt hourly workers who were employed or are currently employed by Wawona Frozen Foods at its California facilities at any time from January 20, 2012 through September 11, 2016.

(Doc. No. 70-1 at 10.)  The class is estimated to include approximately 4,557 members.  (*Id.*) The proposed classes were determined after mediation conducted in front of Honorable Patrick J. O'Hara (retired) on May 3, 2016 and July 13, 2016.  (*Id.* at 10–11.)  The mediation was conducted after substantial discovery had been conducted by the parties, including the exchange of disclosures, interrogatories, document production, and a number of depositions.  (*Id.*)

## LEGAL STANDARDS

Rule 23 mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The following procedures apply to such a proposed settlement:

> (1)  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2)  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

3

(3)   The parties seeking approval must file a statement
identifying any agreement made in connection with the
proposal.

. . .

(5)   Any class member may object to the proposal if it requires
court approval under this subdivision (e); the objection may
be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted).  To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.  However, when parties seek approval of a settlement agreement negotiated *prior* to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946.  Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Bluetooth*, 654 F.3d at 946.

When parties seek class certification for settlement purposes only, Rule 23 "demand[s] undiluted, even heightened, attention" to the requirements for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Although here the parties do not dispute that the class exists for the purposes of settlement, the court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g., Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632.  First, the court conducts a preliminary fairness evaluation and, if applicable, considers preliminary class certification. *Id.*  Second, if the court

makes a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

A district court's preliminary fairness inquiry generally requires assessing the following, pursuant to Rule 23(e):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Prior to formal class certification, a preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

## ANALYSIS

### *1.    Preliminary Evaluation of Fairness of Proposed Class Action Settlement*

First, the court must conduct a preliminary fairness evaluation of the proposed class action settlement, pursuant to Rule 23(e). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). The court should also watch for collusion between class counsel and defendant. *Id.* A preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

5

1    treatment to class representatives or segments of the class, and falls within the range of possible

2    approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

3              In support of the pending motion, plaintiffs submitted the declaration of Robert W. Sink,

4    co-counsel for the plaintiffs.[4] Attorney Sink has litigated class actions for more than twenty

5    years. (Doc. No. 70-3 at ¶ 2.) According to attorney Sink, based on certain of defendant's

6    defenses, there is "a realistic potential that Plaintiffs and Class Members could have received little

7    or no recovery at all." (*Id.* at ¶ 9.) Attorney Sink also states that further litigation could result in

8    fees and costs adding up to "many millions of dollars." (*Id.* at ¶ 10.) These defenses included a

9    *de minimis* defense in relation to any claims concerning lack of payment during the time required

10   for the donning or doffing of required equipment. (*Id.* at ¶ 14.) Attorney Sink declares that it

11   "could have been difficult" to maintain class certification for the rest period claim through a trial.

12   (*Id.*)

13              a.    <u>Negotiations</u>

14              As noted above, a proposed settlement must be the product of serious, informed, non-

15   collusive negotiations. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Attorney Sink

16   declares that the parties engaged in more than one and a half years of contentious litigation prior

17   to settlement, which included "significant discovery," including "over 50,000 pages of

18   documents," as well as the depositions of the named plaintiffs, and defendant's former human

19   resources director and former production supervisor. (Doc. No. 70-4 at ¶ 3.) The parties also

20   engaged in "two full-day mediation session with the Honorable Patrick O'Hara (Ret.), a retired

21   California Superior Court Judge and an experience mediator." (*Id.* at ¶ 5.) These mediations

22   were "hotly contested." (*Id.*) The court concludes the proposed settlement was the product of

23   serious, informed, non-collusive negotiations.

24   _____

25   [4] Only attorney Sink's declaration is discussed herein, though a declaration was also submitted
     by Philip Downey, another co-counsel for plaintiffs. Attorney Downey's declaration is less

26   detailed than attorney Sink's, and simply acknowledges that he was aware of the legal and factual
     strengths of the case here and the potential defenses against it, including the *de minimis* defense

27   which could have barred any recovery for plaintiffs. (Doc. No. 70-4 at ¶ 3.) Attorney Downey
     also believes the settlement to be "fair and reasonable," based on his experience. (Doc. No. 70-

28   4.)

b.      Deficiencies

A proposed settlement does not meet the test for preliminary fairness if there are any obvious deficiencies in the proposed agreement. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Attorney Sink calculated the class members' "realistic top-end damages" as follows. Discovery showed class members worked approximately 686,217 workdays. (*Id.*) Concerning the claims for uncompensated time spent donning and doffing equipment, attorney Sink assumed an average uncompensated time of ten minutes per day and an average pay rate of $9 per hour.[5] (*Id.*) There was evidence "that the uncompensated time realistically ranged from 15 minutes to as little as 5 minutes per day." (*Id.*) Attorney Sink declares he multiplied $9 per hour by 1.5, assuming that the extra ten minutes would be paid at an overtime rate, and determined that payment for ten minutes at that rate worked out to $2.25 per workday. (*Id.*) The amount of $2.25 multiplied by 686,217 workdays equals $1,543,988.00, which would equal the maximum expected recovery for the uncompensated job preparation time. (*Id.*)

Concerning the claims about meal period violations, attorney Sink assumed workers were not offered compliant meal periods on 75 percent of work days.[6] (*Id.*) Moreover, since a meal period penalty under California law is equivalent to one hour of pay, attorney Sink multiplied $9 by 75 percent of the work days (i.e., 514,663) and determined a maximum possible award of $4,631,967.00 for the meal/rest period violations. (*Id.*) Attorney Sink's declaration also recounts that plaintiffs here raised claims for waiting time penalties, failure to itemize wage statements, and violations of California's Private Attorneys General Act ("PAGA"), which were derivative of plaintiffs' other claims. (*Id.*) This appears to reflect what is alleged in the SAC's fifth, sixth, and

---

[5] An average pay rate of $9 per hour was used because both named plaintiffs were paid at that rate and a random sample of class members' rates of pay showed an average pay rate of $9.05 per hour. (*See* Doc. Nos. 75-4, 75-5, 75-7 at ¶ 2.)

[6] This percentage was used because, in counsel's experience, workers sometimes receive a meal period of greater than thirty minutes, and are only required to receive such a break if a shift is greater than five hours in length, which not all shifts are. (Doc. No. 75-7 at ¶¶ 4–5.) Additionally, counsel reviewed a random sample of payroll records which showed that, approximately 21 percent of the time, class members received an extra three minutes for lunch breaks, which would have been an adequate length of time to don, doff, and sanitize. (*Id.* at ¶ 6.) Therefore, a 75 percent estimation is reasonable.

1  eighth causes of action.  (Doc. No. 46 at ¶¶ 57–70, 85–88.)  In a supplemental declaration

2  submitted by attorney Sink following the hearing on the pending motion, he explained that he

3  estimated the realistic value of these claims to be zero.  (*See* Doc. No. 75-7 at ¶¶ 7–15.)  He also

4  explained that he had concerns that at least one claim would not be certified due to manageability

5  issues, and plaintiffs would not prevail on other claims because of the heightened levels of

6  intentionality, willfulness, or knowledge with which defendant would need to be shown to have

7  acted.  (*Id.*)  Therefore, the maximum possible recovery class members stood to recover, in

8  attorney Sink's estimation, was $6,175,955.00.[7]  (Doc. No. 70-3 at ¶ 14.)  The total proposed

9  settlement amount of $4.5 million, per attorney Sink, reflects approximately 75 percent of the

10  estimated total maximum possible recovery.  (Doc. No. 70-3 at ¶ 14.)

11         As indicated at the hearing on the pending motion, in the undersigned's view the proper

12  starting point in analyzing the fairness of the settlement to class members may be from the

13  proposed settlement amount exclusive of attorneys' fees.  After all, in their SAC plaintiffs

14  indicated they would seek an award of attorneys' fees and costs from the defendant pursuant to

15  California Labor Code §§ 218.5, 226, and 2699, California Civil Procedure Code § 1021.5, and

16  29 U.S.C. § 216.  (*See, e.g.*, Doc. No. 46 at ¶¶ 39, 49, 54, 64, 70, 93.)  Such an award would have

17  been paid by the defendant directly, rather than being deducted from the total amount recovered

18  by plaintiffs and putative class members.  The settlement agreement before the court

19  contemplates that the $4.5 million will be the gross amount of payments made by defendant, and

20  attorneys' fees for plaintiffs' counsel will be deducted from that amount.  (Doc. No. 70-1 at 11–

21  13.)  Plaintiffs' counsel anticipate seeking a 33 1/3 percent fee award of $1.5 million.  (*Id.*)  Also

22  to be deducted are up to $75,000 in expenses incurred by class counsel.  (*Id.*)  These are all costs

23  which, according to the SAC, would have been sought from defendant here and not deducted

24  from the class recovery.  Looked at from this point of view, the actual settlement amount for

25  /////

26  /////

27

28
_____
[7]  Attorney Sink's declaration actually provides a sum of $6,175,953.00.  (Doc. No. 70-3 at ¶ 14.)
This appears to simply be an arithmetical or typographical error in the amount of $2.00.

1  purposes of evaluating its fairness to class members may therefore be $2.925 million or

2  approximately 47 percent of the estimated maximum recovery under attorney Sink's estimate.[8]

3  　　　　In any event, whether the settlement amount in this case reflects 75 percent of the total

4  maximum possible recovery as estimated by attorney Sink or approximately 47 percent of that

5  amount as reflected in the alternative calculation set forth above, is of no moment.  The

6  settlement amount in this case is not *per se* unreasonable, and district courts in California have

7  found similar (and even smaller) percentage recoveries to be reasonable for this purpose.  *See,*

8  *e.g.*, *Rivera v. Agreserves, Inc.*, No. 1:15-cv-00613-JLT, 2016 WL 5395900, at *7 (E.D. Cal.

9  Sept. 26, 2016) (finding a settlement of approximately 46 percent to be reasonable); *Villegas v.*

10  *J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov.

11  21, 2012) (settlement of approximately 15 percent preliminarily fair); *Glass v. UBS Fin. Servs.,*

12  *Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (settlement of

13  approximately 25 to 35 percent was reasonable).

14  　　　　Accordingly, the court finds the settlement amount in this case to be fair for the purposes

15  of preliminary approval of the settlement.

16  　　　　　　　　c.　　Preferential Treatment

17  　　　　For a proposed settlement to pass a preliminary fairness determination, the proposed

18  settlement must not provide preferential treatment to certain members of the class or the named

19  plaintiffs.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  The court therefore turns to

20  the attorney's fees provisions, the anticipated incentive fees, and the other administrative costs.

21  　　　　　　　　　　i.　　Attorney's Fees

22  　　　　When a negotiated class action settlement includes an award of attorney's fees, the fee

23  award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312

24  

_____

25  [8]  Plaintiffs' counsel argues that "the Ninth Circuit does not deduct attorneys' fees from the
settlement amount, even in fee-shifting cases."  (Doc. No. 75 at 12.)  It is the case that the

26  decisions cited by plaintiffs in support of this proposition do depict instances in which district
courts did not deduct attorneys' fees prior to calculating the percentage of recovery.  Whether that

27  method of calculating the percentage of the estimated maximum recovery represented by a given
settlement amount is required as a matter of law need not be decided here because the court has

28  concluded that the settlement amount in this case is fair under either calculation of the percentage.

F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).  Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund.  *Id.*; *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

Here, the agreement does not specify the amount that *will* be afforded to attorneys' fees, but rather states that class counsel will petition the court for fees up to one-third  (33 1/3 percent) of the total settlement amount, to be paid from the total $4.5 million settlement, as well as up to $75,000 in costs.  (Doc. No. 70-2 at ¶ 30.)  This reflects the high end of the range for an appropriate award.  *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  Since the court need not reach a final decision regarding an attorney's fee award at this time, preliminary approval of the settlement will not be stymied on this basis.  However, when counsel does seek attorneys' fees, they should be prepared to justify seeking an above-benchmark payment and may not rely solely on defendant's acquiescence on that issue.

### ii.     Incentive Payments

"Incentive awards are fairly typical in class action cases." *Rodriquez*, 563 F.3d at 958–59.  However, the decision to approve such an award is a matter within the court's discretion.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriquez*, 564 F.3d at 958–59.

The Ninth Circuit has emphasized "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citations omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriquez*, 563 F.3d at 958–59.

The settlement agreement here indicates plaintiffs will seek up to $7,500 in incentive payments for the named plaintiffs, to be paid from the total settlement amount, though they do not seek these payments yet. (Doc. No. 70-2 at ¶ 31.) This amount is in line with awards approved by this court in the past. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2016 WL 3418452, at *6. Plaintiffs should present evidence justifying the incentive awards sought at the time they move for them.

### iii.    Settlement Administration and LWDA Payments

The settlement agreement indicates class counsel will petition the court to pay the California Labor and Workforce Development Agency ("LWDA") $7,500 and to pay the settlement administrator $45,000, both out of the general settlement fund. (Doc. No. 70-2 at ¶ 30.) Attorney Sink declares that Rust Consulting's $45,000 bid was the lowest received. (Doc. No. 70-3 at ¶ 12.) The court finds both of these proposed payments to be reasonable.

### d.    Claims Release

The settlement agreement calls for the following release of claims:

> Upon the Effective Date, the claims released by the California Law
> Class Members who do not opt out of this Settlement are all claims

11

> (except for claims under FLSA) that were pled in Plaintiffs'
> operative Second Amended Complaint ("SAC") in the Action and
> all wage and hour claims arising from the facts raised in the SAC
> that could have been brought.

(Doc. No. 70-2 at ¶ 47.)  Considering the California law class as proposed, the court interprets this to mean a release from all wage-and-hour claims based on putative class members being compelled by defendant's policies or procedures to don or doff safety equipment during time prior to or following a shift, or during a meal or rest break period, for the period between January 20, 2011 and September 11, 2016.  This fairly comports with plaintiff's allegations advanced in this action, and the settlement as understood by the court does not propose to release unrelated claims that class members may have against the defendant.

> e.      Collusion

There is no evidence of collusion between the parties here.  The court observes in this regard that the parties participated in two full days of mediation prior to reaching settlement.

> 2.      *Preliminary Certification of Class Related to California Law Violations*

In order to preliminarily certify a class,[9] the court must find all of the requirements of Rule 23(a) are met.  *See Hanlon*, 150 F.3d at 1019.  As a threshold matter, in order to certify a class, a court must be satisfied that:

---

[9]  The 2003 Amendments to Federal Rule of Civil Procedure 23 eliminated the provision stating that class certification orders "may be conditional," and circuit courts have subsequently reached different conclusions about the continued viability of conditional or preliminary certification of settlement classes under the amended rule.  *Compare Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 186 n.8 (3d Cir. 2006) ("[T]he 2003 amendments to the Rule eliminated so-called "conditional" certifications—formerly available under Rule 23(c)(1)(C)"); *with Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendment to Rule 23(c)(1)").  In the absence of Ninth Circuit guidance on the issue, this court will not depart from the procedure commonly employed by district courts in this circuit of certifying settlement classes on a preliminary basis for settlement purposes, and deferring final class certification until after the fairness hearing.  *See Denney*, 443 F.3d at 269 (noting that federal district courts "continue to employ this practice," and that the process of "preliminary" certification is endorsed by the Manual for Complex Litigation and Moore's Federal Practice).  Before granting preliminary certification, the court nonetheless must carry out a searching, rather than a cursory, Rule 23 analysis.  *See Amchem Prods., Inc.*, 521 U.S. at 622 (requiring "undiluted, even heightened attention [to Rule 23 requirements] in the settlement context"); *cf. Pointer*, 2016 WL 696582, at *5 ("[D]espite the Supreme Court's cautions in *Amchem* . . . a cursory approach appears the norm").

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Itel Securities Litigation*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Fed. R. Civ. P. 23(a)).

Once each of these threshold requirements set out under Rule 23(a) is satisfied, a class may be certified if the class action satisfies the predominance and superiority requirements of Rule 23(b)(3). *See Amchem*, 521 U.S. at 615 ("To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'") First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As one district court has summarized:

> In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context.

*Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *6 (E.D.

1   Cal. July 2, 2015) (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10

2   (E.D. Cal. June 11, 2012)).

3                 a.     <u>Rule 23(a)</u>

4                    i.     *Numerosity*

5       A proposed class must be "so numerous that joinder of all members is impracticable."

6   Fed. R. Civ. P. 23(a)(1). Here, the proposed class contains approximately 4,557 members. (Doc.

7   No. 70-3 at ¶ 13.) This is easily sufficient to make joinder of all class members as plaintiffs

8   impracticable. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 449 (E.D. Cal. 2013)

9   (numerosity met with approximately 3,500 class members); *Orvis v. Spokane Cty.*, 281 F.R.D.

10  469, 473 (E.D. Wash. 2012) (numerosity met with 260 class members); *Campbell v.*

11  *PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (approximately one

12  thousand members).

13                 ii.    *Commonality*

14       Rule 23 requires there be "questions of law or fact common to the class." Fed. R. Civ. P.

15  23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a

16  common contention . . . of such a nature that it is capable of classwide resolution—which means

17  that determination of its truth or falsity will resolve an issue that is central to the validity of each

18  one of the claims in one stroke." *Dukes*, 564 U.S. at 350.[10] As the Supreme Court has further

19  explained, this frequently necessitates an inquiry that "overlap[s] with the merits of plaintiff's

20  underlying claim." *Id.* at 351. Thus, in *Dukes*, the question was whether Wal-Mart engaged in a

21  pattern or practice of discrimination, which required looking at "a particular employment

22  decision." *Id.* at 352. The Supreme Court concluded that type of claim, under the facts

23  presented, could not be common among the various class members, because there was no

24  evidence of a "general policy of discrimination." *Id.* at 352–53.

25  /////

26  —————————————————

     [10] Plaintiffs suggest in their motion that they need only "point to a single issue common to the

27  class." (Doc. No. 70-1 at 23) (citing *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir.
     2007)). Given the Supreme Court's subsequent decision in *Dukes*, plaintiffs' suggestion in this

28  regard is subject to question.

In support of their argument on commonality, plaintiffs here point to the following common legal questions: (1) whether the putative class members were similarly denied compensation for all hours worked, including time spent engaging in pre- and post-shift work, and (2) whether defendant failed to provide compliant meal breaks to the putative class members under California state law.  (Doc. No. 70-1 at 23–24.)  Additionally, plaintiffs argue that there are common facts, namely that non-exempt employees were subject to the similar policies and procedures.  (*Id.* at 24.)  At the hearing on the pending motion the court requested additional information from which it could conclude commonality was satisfied, and plaintiffs have provided the same.  Plaintiff Aguilar declares he and all his colleagues were required to don and doff safety equipment and sanitize prior to the beginning of his work, which took approximately five to ten minutes per day.  (Doc. No. 75-1 at ¶ 5.)  Plaintiff Ramos declares similarly, save for estimating that the process took approximately eight to fifteen minutes per day.  (Doc. No. 75-2 at ¶ 5.)  Additionally, a deposition of Ralph Linan, a supervisor at Wawona, indicated that defendant did not compensate employees for time spent donning and doffing safety equipment or sanitizing prior to starting a shift.  (Doc. No. 75-3 at 3.)  Therefore, it appears defendant had a policy of not paying employees for the time spent donning and doffing safety equipment and sanitizing, meaning common questions of law and fact run throughout this case.  Commonality is satisfied.

### iii.    Typicality

Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory.  *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).  Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Given the declarations of plaintiffs Aguilar and Ramos, as well as Ralph Linan, it is clear all employees here were governed by a standard policy which did not compensate for the time at issue.  (*See* Doc. Nos. 75-1, 75-2, 75-3.)  Therefore, the typicality requirement of Rule 23(a) is satisfied.

*iv.    Adequacy of Representation*

Adequacy of representation is met if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has noted that two criteria for determining this have been recognized: "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).   The Ninth Circuit has cautioned that incentive awards for named plaintiffs may, in certain situations, impact the adequacy of those plaintiffs to serve as class representatives. *Radcliffe*, 715 F.3d at 1164–65. Particularly, where an incentive award is specifically conditioned on the named plaintiffs' endorsement of the settlement or where there is a significant disparity between the incentive awards and the typical class member's recovery, plaintiffs' interests may be sufficiently unaligned with the class to find they are not adequate representatives. *Id.*  In *Radcliffe*, the Ninth Circuit commented:

> There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards. Under the agreement, if the class representatives had concerns about the settlement's fairness, they could either remain silent and accept the $5,000 awards or object to the settlement and risk getting as little as $26 if the district court approved the settlement over their objections.

*Id.* at 1165.

The amount of incentive payments sought here—$7,500—is on the order of magnitude the Ninth Circuit cautioned about in *Radcliffe* when compared to the approximately $650 to be received by an average class member.  This settlement agreement, however, does not condition receipt of any incentive awards on support of the settlement, and merely indicates plaintiffs will apply to the court for such payments.  (Doc. No. 70-2 at ¶¶ 29–32.)  Further, both named plaintiffs separately declare they were not promised the proposed amount and understand the settlement agreement is not contingent on them receiving any particular incentive payment.  (Doc. Nos. 75-1 at ¶ 11; 75-2 at ¶11.)  Moreover, the court has no reason to doubt that class counsel are

1    well qualified:  attorney Sink declares that he has twenty years of experience litigating class

2    actions, while attorney Downey asserts he has litigated and settled more than thirty wage-and-

3    hour class actions.  (Doc. No. 70-3 at ¶ 2; 70-4 at ¶ 2.)  Given these facts, the court is satisfied the

4    named plaintiffs and class counsel can adequately represent the class.

5                         b.      Rule 23(b)(3)

6         Aside from the four aforementioned prerequisites to class certification, certification must

7    also meet one of the three requirements of Rule 23(b).  *See Amchem*, 521 U.S. at 615.

8    Certification is sought here under Rule 23(b)(3).  (Doc. No. 70-1 at 25–26.)  This provision

9    requires the court to find that "the questions of law or fact common to class members

10   predominate over any questions affecting only individual members, and that a class action is

11   superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

12   R. Civ. P. 23(b)(3).  Again, while this requirement is similar to the Rule 23(a)(2) commonality

13   requirement, the standard is much higher at this stage of the analysis.  *Dukes*, 564 U.S. at 359;

14   *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022.

15        Here, as discussed above, certification is predicated on a common policy that affected all

16   similarly situated employees:  that they would not be compensated for the time spent donning and

17   doffing safety equipment or sterilizing prior to commencing work, even though these were

18   required parts of their job duties.  (Doc. Nos. 75-1 at ¶ 5; 75-2 at ¶ 5; 75-3 at 3.)  Therefore,

19   common issues predominate in this class action, including whether that policy was unlawful

20   under California employment law, and whether the amount of uncompensated time was *de*

21   *minimis*.  (*See* Doc. No. 75-7 at ¶ 6.)  The court is satisfied that these common questions

22   predominate over any questions affecting only individual members.

23        Further, a class action here is superior to any other available method for adjudicating this

24   controversy.  *See* Fed. R. Civ. P. 23(b)(3).  Joinder of more than 4,000 plaintiffs would be

25   virtually impossible, and the amount in controversy would likely be far too little to warrant

26   bringing each of these similar claims as individual actions.  Thus, a class action is ideally suited

27   for resolution of this dispute, and is superior to other available methods.

28   /////

*3.      Preliminary Certification of Collective Action Allegations Under the FLSA*

Pursuant to the FLSA, an employee may file a civil action against an employer that fails to adhere to federal minimum wage and overtime law.  29 U.S.C. § 216(b).  Additionally, "an employee may bring a FLSA collective action on behalf of himself/herself and other employees who are 'similarly situated.'"  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015).  Unlike a Rule 23 class action, non-party employees can join an FLSA class action only if they opt-in by "fil[ing] written consents to join the action."  *Id.* (citing 29 U.S.C. § 216(b) and *Valladon v. City of Oakland*, No. C 06–07478, 2009 WL 2591346, at *7 (N.D. Cal. Aug. 21, 2009)).

"Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term 'similarly situated.'"  *Id.* (citing *Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV644, 2015 WL 5167144, at *2 (S.D. Cal. Sept. 3, 2015) and *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 426–27 (N.D. Cal. 2010)).  Accordingly, courts in the Ninth Circuit have used an *ad hoc* two-tiered approach to decide if FLSA plaintiffs are similarly situated.  *Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (citing *Wynn v. National Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)).  This process has been described by one court as follows:

> The first step under the two-tiered approach considers whether the proposed class should be given notice of the action.  This decision is based on the pleadings and affidavits submitted by the parties. The court makes this determination under a fairly lenient standard due to the limited amount of evidence before it.  The usual result is conditional class certification.   In the second step, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried.  If the court finds that the plaintiffs are not similarly situated at that step, the court may decertify the class and dismiss opt-in plaintiffs without prejudice.

*Syed v. M–I, L.L.C.*, No. 1:12–CV–1718, 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014).  As indicated, the first step—the notice stage—employs a "lenient standard."  *Millan*, 310 F.R.D. at 607.  "For conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'"  *Lewis*, 669 F. Supp. 2d at 1127 (citing *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).  Since

18

potential members of FLSA collective actions are not precluded from initiating their own claims unless they opt-in, "giving notice to potential plaintiffs of a collective action has less to do with the due process rights of the potential plaintiffs and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *Id.* (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).

Here, there are substantial allegations that the putative class members were the victims of a single, allegedly unlawful policy, namely one requiring them to don and doff safety equipment and sanitize pre-work without compensation.  (Doc. Nos. 75-1 at ¶ 5; 75-2 at ¶ 5; 75-3 at 3.)  The notice to be sent to the class covers the FLSA provisions, and notifies potential collective action participants that they must opt-in, and if they fail to do so will neither receive money from the settlement nor forego any FLSA claims they may have.  (Doc. No. 70-2 at 37–38.)  The court approves preliminary certification of an FLSA collective action.

      *4.     Proposed Class Notice and Administration*

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will excluded members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

/////

Here, the proposed class notice describes the nature of the action, the prospective classes involved, the claims, issues, and defenses raised in the action, the terms of the settlement, the proposed attorneys' fees and liability releases, and the time and place of the final fairness hearing. (Doc. No. 71-1 at 36–43.)  It discusses the differences between the FLSA class and the California law class for the purposes of the FLSA collective action.  (*Id.*)  It sets out the means and deadlines for class members to object to the proposed settlement, and to be excluded from the settlement. (*Id.*)  It advises class members they may appear in the matter either personally or through an attorney.  (*Id.*)  It also notifies prospective class members of the binding effect of the settlement upon them.  (*Id.*)

Additionally, the plaintiffs propose the following schedule:

| Event | Date |
|---|---|
| Defendant will cause a notice of the proposed Settlement to be served upon the appropriate state and federal officials pursuant to 28 U.S.C. § 1715. | Within 10 calendar days of preliminary approval of settlement. |
| Defendant provides Settlement Administrator with Class Member information. | Within 10 calendar days of preliminary approval of settlement. |
| Settlement Administrator mails Notice packet to Class Members | Within 20 calendar days after preliminary approval of settlement. |
| Deadline for Class Members to submit FLSA Opt-In Form, Exclusion, or Objections | 30 calendar days after Settlement Administrator first mails Notice packets. |
| Deadline to File Motion for Final Approval of Settlement and Motion for Attorneys' Fees, Expenses, and Enhancement Awards. | 15 calendar days before Final Approval Hearing. |
| Final Approval Hearing | To be scheduled by the Court at least 95 [days] after preliminary approval of settlement. |

(Doc. No. 71-1 at 33–34.)

The court finds that the notice and the manner of notice proposed by plaintiff meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate in these circumstances.

/////

CONCLUSION

For all of the reasons stated above, plaintiffs' motion for preliminary approval of a class action settlement (Doc. No. 70) is granted and:

1. Preliminary class certification under Rule 23 is approved;

2. Plaintiffs' counsel Robert W. Sink and Philip A. Downey are appointed as class counsel;

3. The named plaintiffs Luis Aguilar and Veda Ramos are appointed as class representatives;

4. The proposed notice and claim form conform with Federal Rule of Civil Procedure 23 and are approved;

5. Rust Consulting is approved as claims administrator;

6. The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

7. The hearing for final approval of the proposed settlement is set for May 16, 2017 at 9:30 a.m.; and

8. The proposed settlement implementation schedule is adopted in part and plaintiffs' counsel are directed to submit a proposed order for the court's consideration setting specific calendar dates in accordance with that schedule now that this order has issued. However, the motion for final approval of class action settlement should be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230, rather than the fifteen days in advance of hearing requested by plaintiffs.

IT IS SO ORDERED.

Dated: __**January 11, 2017**__                    _____

UNITED STATES DISTRICT JUDGE