UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS AGUILAR and VEDA RAMOS, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAWONA FROZEN FOODS, and DOES 1–50, inclusive,<br><br>Defendants. | No. 1:15-cv-00093-DAD-EPG<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES<br><br>(Doc. Nos. 81, 83) |

Currently pending before the court are motions for final approval of a class action settlement and for attorneys' fees, both filed on April 18, 2017. (Doc. Nos. 81, 83.) The motions are not formally opposed, though defendant filed a separate memorandum in support of the former motion on May 2, 2017 which takes issue with certain requests made by plaintiffs. (Doc. No. 91.) The court held a hearing on May 16, 2017, at which attorneys Robert Sink and Philip Downey appeared on behalf of plaintiffs and attorneys Ian Wieland and Howard Sagaser appeared on behalf of defendant. For the reasons that follow, the court grants both motions.

**BACKGROUND**

This court previously granted preliminary approval of a class action settlement in this matter, as well as approval of an accompanying "opt-in" settlement pursuant to the Fair Labor Standards Act ("FLSA"), on January 11, 2017. (Doc. No. 78.) Pertinent factual details as well as

plaintiffs' allegations may be found in that order. Since preliminary approval was granted, notice of the settlement was mailed to 5,628[1] current and former employees of defendant. (Doc. No. 86 at ¶ 10.) Of those notices, 272 were ultimately determined to be undeliverable, despite the class administrator's attempts to trace all class members. (*Id.* at ¶ 11.) No objections to the settlement were filed, and no class members opted out of the settlement. (*Id.* at ¶¶ 14, 15.) In addition, the settlement administrator received 1,642 opt-in forms concerning the FLSA portion of the settlement. (*Id.* at ¶ 13.) Of these, 1,485 were considered complete and timely by the settlement administrator and 157 opt-in forms were either incomplete or untimely. (*Id.*) Plaintiffs note that the parties "agree to accept the late Opt-In forms . . . provided the Court is willing to accept them." (Doc. No. 81-1 at 23, n.8.) The court accepts all 1,642 individuals who filed opt-in forms as part of the FLSA portion of this settlement.

## FINAL CERTIFICATION OF CLASS ACTION

The court conducted an examination of the class action factors during its preliminary approval of the settlement, and found certification warranted. (*See* Doc. No. 78 at 12–17.) Since

---

[1] The court's preliminary approval order indicated the class was anticipated to be approximately 4,557 members, which was what the parties believed as of the time that motion was filed. (Doc. No. 78 at 14.) While plaintiffs balk at the new, larger number of class members in their briefing on the pending motions, the class certified by the court for settlement purposes is appropriately defined by external, objective criteria, not by a specific number of members. *See Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 622 (S.D. Cal. 2015) ("A class is ascertainable if it is defined by objective criteria.") (quoting *Bruton v. Gerber Prod. Co.*, No. 12-cv-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014)); *Abdeljalil v. General Elec. Cap. Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) ("[C]lass members likely can be determined by objective criteria."); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 566 (C.D. Cal. 2014) ("[T]he class definition identifies putative class members by objective characteristics; this is the mark of an ascertainable class."). The court has two potential interests in the class size here: (1) that the class is sufficiently numerous for certification; and (2) that this change does not affect the fairness or adequacy of the settlement. The class is clearly sufficiently numerous, whether it contains 4,557 members or 5,628 members. Moreover, counsel for both sides represented at oral argument on the pending motions that the violation rate remained unchanged, even if the number of unique class members increased. According to defense counsel, defendant's facilities can accommodate no more than 1,600 employees at any given time, and the increase in number of class members was simply due to seasonal turnover. Therefore, the class consists of whatever number of individuals meet the class definition. That number is apparently 5,628. Because the number of violations the class has suffered has not changed, the court's fairness analysis is not impacted by the increase in the number of class members.

no additional issues concerning whether certification is warranted have been raised, the court does not repeat its prior analysis here, but instead reaffirms it and finds final certification appropriate. The following classes are certified:

> California Law Class:
>
> All non-exempt hourly workers who were employed or are currently employed by Wawona Frozen Foods at its California facilities at any time from January 20, 2011 through September 11, 2016.
>
> FLSA Overtime Class:
>
> All non-exempt hourly workers who were employed or are currently employed by Wawona Frozen Foods at its California facilities at any time from January 20, 2012 through September 11, 2016.

In addition, plaintiffs Luis Aguilar and Veda Ramos are confirmed as class representatives, while attorneys Robert W. Sink and Philip A. Downey are confirmed as class counsel. Rust Consulting is confirmed as the settlement administrator.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City*

*of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)); *see also Lane*, 696 F.3d at 819. "To survive appellate review, the district court must show it has explored comprehensively all factors[.]" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *Hanlon*, 150 F.3d at 1026.

      a.    <u>Strength of Plaintiff's Case</u>

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion, because evidence has not been fully presented. *Id*. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Plaintiffs believe their claims that they were not paid for time spent donning and doffing safety gear and washing their hands had merit under California law. (Doc. No. 81-1 at 18.) However, defendant maintained that a *de minimis* defense existed to these claims, and plaintiffs' counsel recognized there was at least some chance, if the defense were successful, that plaintiffs would have received no recovery at all. Further, counsel represents there was some evidence

4

from defendant's human resources director that the defendant actually did provide additional paid time for such activities. (*Id.*; *see also* Doc. No. 84 at ¶ 15.) Therefore, it is clear that plaintiffs' case, despite its strengths, was seriously contested. This weighs in favor of the court concluding this settlement should be approved.

   b. <u>The Risk, Expense, Complexity, and Likely Duration of Further Litigation and the Risk of Maintaining Class Action Status Through Trial</u>

  Employment law class actions are, by their nature, time-consuming and expensive to litigate. *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015). Here, plaintiffs' counsel attests that continuing litigation in this case would have involved numerous depositions, substantial presentation of documentary evidence, and significant expert preparation and analysis. (Doc. No. 84 at ¶ 10.) He estimates fees and costs would easily add up to millions of dollars, if the case were to advance to trial. (*Id.*) Further, it is clear class certification would have been opposed. (*Id.*) These factors weigh in favor of approving final settlement of the class action.

   c. <u>The Amount Offered in Settlement</u>

  The gross settlement amount in this case is $4.5 million.[2] As the court previously determined, this figure represented either 47 percent or 75 percent of the total anticipated recovery amount of approximately $6.175 million, depending on whether attorneys' fees were subtracted first. (Doc. No. 78 at 7–9.) Plaintiffs' counsel attests that, with the expanded number of class members identified above, the average settlement amount will be $506 per class member. (Doc. No. 84 at ¶ 15.) As noted in the court's prior order, this settlement amount is fair and

---

[2] The parties initially suggested in their briefing that a disagreement existed as to the settlement amount, with defendant reporting the settlement agreement required only payment of $4,450,000. (*See* Doc. No. 91-1 at ¶ 9.) This court's preliminary approval order approved a $4,500,000 settlement. (Doc. No. 78 at 7–9.) However, at the hearing on the pending motions defense counsel advised the court that any dispute regarding the settlement amount—a simple arithmetic error in the documents—was resolved, and confirmed that $4,500,000 was the correct settlement amount. Defendant made its first payment in connection with the settlement of $2,225,000 on April 28, 2017. (Doc. No. 91-1 at ¶ 9.) Defendant will make a second payment of $2,275,000 by no later than April 30, 2018, in accordance with the time table set forth in the settlement agreement. (Doc. No. 71-1 at 17.)

5

reasonable in relation to the expected recovery. Since the total number of alleged violations is unchanged, the court's analysis of reasonableness of the settlement amount also remains unchanged. The amount offered in settlement supports final approval.

### d. The Extent of Discovery Completed and the Stage of the Proceedings

The parties participated in more than one and a half years of litigation prior to reaching a settlement in this action. (Doc. No. 84 at ¶ 3.) Defendant produced, and class counsel reviewed, more than 50,000 pages of discovery documents. (*Id.*) Further, at least four depositions, as well as numerous interviews with class members, were conducted. (*Id.*) The case was only settled after two full days of mediation, conducted on May 3, 2016 and July 13, 2016. (Doc. No. 84 at ¶ 5.) All of this supports the conclusion that this settlement is "not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

### e. The Experience and Views of Counsel

Plaintiffs' counsel avers that "[t]he Settlement Agreement provides a fair and reasonable settlement for Plaintiffs and the Settlement Class with respect to their claims." (Doc. No. 84 at ¶ 7.) Counsel also represents that "[t]he Settlement offers the Settlement Class Members significant advantages over continued prosecution of their case against Defendants." (*Id*. at ¶ 8.) Attorney Sink notes he has twenty-two years of experience litigating class actions and complex cases in both state and federal court. (*Id*. at ¶ 2.) The court accepts plaintiffs' counsel's declaration, and it too supports the conclusion that the settlement should be approved.

### f. The Presence of a Governmental Participant

The settlement agreement contemplates payment of $7,500 to California's Labor and Workforce Development Agency ("LWDA") under the Private Attorneys General Act ("PAGA"). (See Doc. No. 70-2 at 13.) This too weighs in favor of approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13cv2679-CAB (BGS), 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (factoring civil PAGA penalties in favor of settlement approval).

g. <u>The Reaction of the Class Members to the Proposed Settlement</u>

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate. *See National Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. 2009). Here, an employee of the settlement administrator, Rust Consulting, declares no requests for exclusion from the settlement or objections to it were received. (Doc. No. 86 at ¶¶ 14, 15.) Accordingly, all factors weigh in favor of granting final approval and the court approves the settlement as fair, reasonable, and adequate.

## ATTORNEYS' FEES, INCENTIVE PAYMENTS, AND OTHER EXPENSES

In addition to final certification of the class and approval of the class action settlement, also before the court is plaintiffs' motion for attorneys' fees and expenses, incentive payments for the named class representatives, and approval of payments to the settlement administrator. (Doc. No. 89-1 at 24.) For the reasons discussed below, the court approves of and will order these payments.

a. <u>The Requested Attorneys' Fees are Reasonable</u>

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. v. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

/////

Because this case is premised on federal question jurisdiction (Doc. No. 1 at 1), federal law governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."); *see also* 10 Fern M. Smith, *Moore's Federal Practice* Civil § 54.171 (2015) ("In cases within the district courts' federal-question jurisdiction, state fee-shifting statutes generally are inapplicable.") "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino*, 290 F.3d at 1047. The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

According to their motion, plaintiffs' attorneys seek an award of one-third, or 33 ⅓ percent, of the common fund in attorneys' fees, equaling $1.5 million. (Doc. No. 89-1 at 9–15.) The requested above benchmark award is supported by the record before the court. Attorney Sink has contributed over 650 hours to this case so far, while co-counsel Philip Downey has invested more than 875 hours in the litigation and his associate Cory Lee has worked almost 150 hours on

the matter.  (Doc. No. 84 at ¶ 16; Doc. No. 85 at ¶ 6.)  This reflects a significant investment of time and effort in obtaining this settlement—more than 1,600 billable attorney hours so far— which would not have been compensated at all in lieu of some significant monetary compensation for the class.  Further, the amount of time invested would necessarily require class counsel to eschew other work in order to devote their energies to this case, which was intensely opposed and fervently litigated.  (*See* Doc. No. 84 at ¶¶ 3, 5) (noting the more than 50,000 pages of discovery documents reviewed by class counsel and the four depositions and two mediations conducted prior to settlement).  Indeed, the court's own docket depicts significant litigation in this suit even prior to the filing seeking class certification.  (*See* Doc. Nos. 34, 35, 36, 37, 38) (motion to compel); Doc. No. 50 (informal telephonic discovery dispute); Doc. No. 55 (motion for order requiring plaintiff to submit trial plan).  Last, but certainly not least, counsels' efforts here on behalf of the class resulted in a recovery of more than $4 million, which is certainly substantial for the thousands of class members they represented.  This amount constituted at least 47 percent, if not 75 percent, of the total possible recovery. (*See* Doc. No. 78 at 7–9.)  This is far greater than the percentage recovered in many other wage-and-hour class actions heard in federal courts in this circuit.  *See, e.g.*, *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *10 (settlement for 14 percent of total possible recovery found reasonable); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (11 percent to 27 percent); *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC(ANx), 2014 WL 2761316, at *7 (C.D. Cal. June 12, 2014) (31 percent); *In re Portal Software, Inc. Sec. Litig*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (25 percent).  These considerations support an above benchmark attorney fee award in this case.

     Given the general support in the record for this fee award, the court next turns to the lodestar amount in order to cross-check the requested attorneys' fee award's reasonableness.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Beyond simply

the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

      This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, ___ F. Supp. 3d ___, 2016 WL 8711436, at *14–15 (E.D. Cal. July 15, 2016) (concluding that Fresno division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25

(E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners). Since these rates are only for the purposes of generally cross-checking the reasonableness of an award of one-third of the common fund as attorneys' fees, the court finds that the rates requested by plaintiffs' counsel here are sufficient for this purpose and will employ those rates in calculating the lodestar.

Additionally, counsels' declarations are sufficient to establish the number of hours worked on this matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)).

Attorney Sink declares that to date he has worked 659.1 hours and anticipates working an additional 20 hours on this matter. (Doc. No. 84 at ¶ 16.) His hourly rate reduced for the Eastern District of California is $695 per hour. (*Id.*) Attorney Sink arrived at this rate by noting that the Santa Clara County Superior Court had previously approved his hourly rate of $826, and observing that he was aware of the rates awarded to other class action partners with comparable experience to himself in this District. (*See id.* at ¶ 17) (citing *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452–453 (E.D. Cal. 2013) (reducing rate for a partner with 21 years of experience from $900 to $720 per hour)). Attorney Downey notes that he worked 876.8 hours on this matter, while an associate, Cory Lee, worked 147.3 hours. (Doc. No. 85 at ¶ 6.) Mr. Downey has been an attorney for more than 18 years, while Lee has been an attorney for more than 14 years. (*Id.* at ¶ 2.) Downey attests that his hourly rate is $615, while Lee's is $495. (*Id.* at ¶ 7.) The lodestar rate for attorneys Sink, Downey, and Lee is therefore $471,974.50,

/////

/////

11

$539,232, and $72,913.50, respectively. The total lodestar amount is therefore $1,084,120.[3] Given the requested attorneys' fee of $1.5 million, the lodestar multiplier is approximately 1.4.[4] This is on the low end of multipliers which are typically approved in class action settlements. *See* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts").

The court therefore finds that the requested attorneys' fee award is reasonable.

b. <u>Counsel's Requested Expenses are Reasonable</u>

In addition to attorneys' fees, counsel request an award of costs associated with litigating the case, specifically $15,685.56 for attorney Sink's office and $33,852.70 for attorney Downey's office. (Doc. No. 89-1 at 22.) Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

Attorney Downey has provided an itemized list of individual costs associated with this litigation. (Doc. No. 85 at 12–25.) This list generally includes expenses for rental cars, hotels, meals, and other transportation costs, deposition costs, class notice expenses, postage, interpreters, investigators, and other similar costs. Attorney Sink provides a similar, albeit more succinct, list of expenses, for mediators, court fees, travel, postage and copying, advertising to locate witnesses, and courier services. (Doc. No. 90 at 15.)

These are all reasonable expenses and, accordingly, they will be awarded.

/////

---

[3] The court notes that, if these rates were reduced to the lower rates awarded in some cases in this division of the court, the lodestar amount would be $648,379.

[4] Using the lower lodestar amount, the multiplier would be approximately 2.3, which is still well within the reasonable range.

c. <u>The Requested Class Representative Incentive Payments are Reasonable</u>

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). However, the decision to approve such an award is a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . . [C]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [her] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958–59. The district court must evaluate their awards individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In this case, plaintiffs seek incentive awards of $7,500 each for Luis Aguilar and Veda Ramos. Both plaintiffs declare that they "vigorously represented" the class's claims, and assisted counsel by searching for documents, providing written discovery responses, and locating witnesses. (Doc. No. 82-2 at 2; Doc. No. 82-3 at 2.) They also participated in depositions, and

13

signed a release that was broader than the release generally contemplated by the class. (*Id.*) Further, plaintiffs believe they placed both themselves and their families at significant reputational risks by agreeing to serve as the named plaintiffs in this class action. (*Id.*)

Incentive payments of $7,500 are a number of times higher than the average recovery of about $500. That said, incentive payments in the requested amount are not outside the realm of what has been approved as reasonable by other courts. *See, e.g.*, *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *8 (approving a $10,000 incentive award where average awards were estimated to be $2,616); *Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (approving $15,000 incentive payments for average recovery of $3,700); *Clayton v. Knight Transp.*, No. 1:11-cv-00735-SAB, 2014 WL 1154098 at *2, 6 (E.D. Cal. Mar. 21, 2014) (awarding $3,500 incentive payment where average recovery was approximately $150); *Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929 at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive payments where average class recovery was approximately $400). Nothing in the declarations of the named plaintiffs or the settlement agreement indicates that plaintiffs' agreement to the settlement was conditioned on a promise of them receiving an incentive award. Indeed, both plaintiffs note they understood the settlement was not contingent on the awarding of the incentive payments they requested. (Doc. No. 82-2 at 2; Doc. No. 82-3 at 2.) The court finds these incentive payments are fair and do not destroy the adequacy of class representation.

        d.      <u>Payment to the Settlement Administrator is Reasonable</u>

The settlement administrator, Rust Consulting, Inc., filed a declaration with the court noting its involvement in this matter included mailing various class notices, receiving and reviewing the opt-in forms for the FLSA class, and tracking requests for exclusion, and in the future will be responsible for drafting and mailing the settlement checks to the various class members. (Doc. No. 86 at ¶ 3.) While the initial estimate for settlement administration costs was $45,000, this amount was increased to $50,000 because of the aforementioned increase in the number of class members following preliminary approval. (*Id.* at ¶ 16.) Plaintiffs seek the court

/////

to direct payment of $50,000 to Rust Consulting.  (Doc. No. 83 at 20.)  The court finds these costs reasonable and will direct payment in the requested amount.

      e.     <u>PAGA Payment</u>

Though the moving papers do not discuss the anticipated PAGA payment, one is anticipated in the settlement agreement and counsel affirmed at the hearing on the pending motions that the court should order a PAGA payment be made from the settlement amount.  (*See* Doc. No. 70-2 at 12–13 ("Class Counsel will petition the Court to pay the LWDA $7,500.00.").)  The court finds this PAGA payment reasonable, and directs that it be made from the common fund.

## CONCLUSION

For the foregoing reasons,

1. The court finds certification is warranted and that the settlement is fair, reasonable, and adequate and, therefore, the motion for final certification of the class and final approval of the class settlement (Doc. No. 81) is granted;

    a. Luis Aguilar and Veda Ramos are confirmed as class representatives;

    b. Attorneys Robert W. Sink and Philip A. Downey are confirmed as class counsel;

    c. Rust Consulting is confirmed as the settlement administrator;

    d. Defendant Wawona will make its remaining payment of $2,275,000 by no later than April 30, 2018, in accordance with the settlement agreement; and

    e. As contemplated by the settlement agreement, no money from the common fund will revert to defendant Wawona, and any settlement amount remaining due to uncashed checks sent to class members will be donated to Valley Children's Hospital in Madera, California.

2. The motion for attorneys' fees and class representative incentive payments (Doc. No. 83) is granted, the court finding that the requested fees, payments and expenses are reasonable;

    a. Class counsel are awarded one-third of the common fund, totaling $1.5 million;

/////

  b. Class counsel Sink and Downey are awarded their requested expenses of $15,685.56 and $33,852.70, respectively;

  c. Plaintiffs Aguilar and Ramos are awarded incentive payments of $7,500 each;

  d. Rust Consulting is awarded $50,000 as settlement administrator; and

  e. Payment of $7,500 for the PAGA award is awarded to the LWDA;

3. The parties are directed to abide by the settlement agreement, and the court will retain jurisdiction over this matter for the purpose of enforcing the settlement agreement; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **May 18, 2017**

             */s/ Dale A. Drozd*
             UNITED STATES DISTRICT JUDGE